UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MORA BASULTO,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF MESA VERDE DETENTION CENTER, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-01735-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (A-Number 215 563 510)<br><br>(Doc. 1)<br><br>**7-Day Objection Period** |

Petitioner Efrain Mora Basulto, a federal immigration detainee proceeding by counsel, initiated this action on March 3, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 1).  That same day, Petitioner filed a motion for temporary restraining order ("TRO").  (Doc. 2).  Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the Mesa Verde Detention Center.  (Doc. 1 ¶ 3).  Respondents are the unnamed Warden of the Mesa Verde Detention Center and the unnamed Director of the ICE Field Office in San Francisco.  *See id.*

On March 3, 2026, the assigned district judge denied the TRO and referred the matter to the undersigned for a determination on the merits.  (Doc. 5).  At the Court's direction, on March 27, 2026, Respondents timely filed a response to the petition and a motion to dismiss Respondent the Director of the ICE Field Office in San Francisco.  (Doc. 7, 8).  Petitioner filed a reply that same day.  (Doc. 9).  For the reasons set forth herein, the undersigned recommends that Petitioner's

petition for writ of habeas corpus be granted.

I.      **Relevant Background**

The relevant facts are drawn from the parties' filings. *See* (Docs. 1, 8, 9). Petitioner is a citizen and native of Mexico who entered the United States without inspection in 2000. (Doc. 1 ¶ 15). At some point following his entry into the United States, Petitioner was released from custody by immigration authorities. *See id*. ¶¶ 2, 17 (allegations that Petitioner was detained by ICE when he reported for a "required check-in appointment"). On November 30, 2025, Petitioner was detained by ICE after reporting to his required check-in appointment. *Id.* ¶ 17. Prior to his re-detention, Petitioner worked at a milk factory for 20 years. *Id.* ¶ 22. Petitioner was arrested in 2019 for domestic violence but the charges were later dropped. He was also charged with speeding and unlicensed driving, though no date is provided for these charges. *Id.* ¶ 20.

Respondents acknowledge that Petitioner was released by the Department of Homeland Security ("DHS") at its discretion prior to his re-detainment. (Doc. 8 at 3). Respondents state that Petitioner has multiple Alternatives to Detention conditions violations, attaching a violation list report. *Id.* at 2, 6. Although that document lists three alleged incidents, for two of the purported violations, under a category titled "Violation" in the report, the report states "No." For the third, noted as a virtual home visit failure on April 15, 2025, the report states "Yes." *Id.* at 6. Respondents do not advance any further argument as to how Petitioner violated his release terms nor provide any particulars thereto.

The Court also takes judicial notice that Petitioner has a docket date of February 12, 2025.[1]

II.     **Governing Authority**

A.      **The Writ of Habeas Corpus**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus

---

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 24, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co*., 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

**B.      Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)**

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

> **1.      Full Removal Proceedings and Discretionary Detention (§ 1226)**
>
> The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).
>
> "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of

the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2.    Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible

fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has

6

made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

**C.    Parole Revocation**

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision.  The court held:

Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**

8 U.S.C. § 1182(d)(5)(A).

*Id*. at 1133 (emphasis added).  *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion.  *Id*. at 1146-47.  An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Id*. at 1144 (footnote and citation omitted).  Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall,

7

in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)). 8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id*. at 146. And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id*. (emphasis added). Other courts, including this Court, have held similarly. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*,

8

704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

### III.    Exhaustion

#### A.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'"  *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241."  *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'"  *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."  *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived."  *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

#### B.    Analysis

Neither Petitioner nor Respondents address the issue of exhaustion.  *See* (Docs. 1, 8).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject

to mandatory detention under § 1225(b).  *See* (Doc. 8 at 1); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Further, the BIA has held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile.  *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief.  *See, e.g.*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.    Discussion

Petitioner asserts two causes of action in his petition: (1) for violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and (2) for violation of the Immigration and Nationality Act ("INA").  (Doc. 1 at 5).

As set forth below, because the undersigned finds that Respondents have violated Petitioner's constitutional rights to procedural due process, and because Petitioner's other claim seeks the same or similar relief (*i.e.*, for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof), the undersigned forbears from addressing Petitioner's other claims.

10

**A.    Procedural Due Process**

1.    Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest

11

in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

                    2.    Analysis

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner has an underlying, continuing liberty interest in being free from re-detention. Specifically, Petitioner was released by DHS at its discretion upon Petitioner's entry into the United States. (Doc. 8 at 3). By releasing Petitioner in their discretion, immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Accord *Rodriguez Diaz*, 53 F.4th at 1196. Though neither Petitioner nor Respondents provide a date of release, as Petitioner asserts he worked at a milk factory for 20 years, it is reasonable to conclude Petitioner remained released from immigration detention for a significant amount of time. (Doc. 1 ¶ 22). Petitioner asserts that he was arrested for domestic violence but charges were dropped, and that he was charged with speeding and unlicensed driving. *Id.* ¶ 20. Respondents do not assert that Petitioner was convicted of, or charged with, any crimes. *See* (Doc. 8). Respondents claim that Petitioner has three violations of his conditions of release but do not elaborate as to the particulars of these purported violations and they do not proffer facts to suggest Petitioner is a danger to the public or a flight risk. *See id.*

The undersigned agrees with other courts and other judges of this Court that noncitizens released from immigration custody on general orders of supervision or on their own recognizance

12

have a liberty interest in their freedom that implicates protections under principles of procedural due process. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *see id.* ("[E]ven if immigration detainees must wait months before a periodic re-review of their detention, those already released on immigration bond possess an interest in their continued liberty, which grows over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020). Accord *Doe*, 787 F. Supp. 3d at 1094 (considering in connection with a petitioner's procedural due process claim that "[t]he lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty"); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute"). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Respondents assert that Petitioner is an "applicant for admission" and is "subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." (Doc. 8 at 1; citing, *inter alia*, *Alonzo v. Noem*, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025)). The petitioners' circumstances in *Alonzo* are factually dissimilar from those presented here, as another judge of this Court has explained: Petitioner here was detained by DHS and released, and immigration proceedings have remained pending for a significant period of time. *See Garcia v. Chesnut*, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *8 (E.D. Cal. Dec. 31, 2025) ("However, unlike here, the petitioners in *Valencia* and *Alonzo* had never been encountered, let alone processed, by immigration officials, and had not been released on recognizance pending completion of Section 240 removal proceedings.").

Additionally, other judges of this Court, as well as many other courts, have considered and rejected the government's arguments, finding that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens released following their initial encounter with immigration authorities and have resided in the United States for a significant period, like Petitioner here. *See*, *e.g.*, *H.J.G.G. v. Wofford*, No. 1:25-cv-01718-JLT-EPG-HC, 2025 WL 3761803, at *4 (E.D. Cal. Dec. 30, 2025) (citing *Castillo v. Wofford*, No. 1:25-cv-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025)); accord *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 935-37 (N.D. Cal. 2025), *appeal filed*, No. 25-7472 (9th Cir. Nov. 26, 2025), *and stayed* (9th Cir. Jan. 29, 2026). Under such circumstances, "the government cannot switch tracks" and subject Petitioner to mandatory detention now under section 1225(b)(2) "after it previously released him on his own recognizance under section 1226(a)." *Valencia Zapata*, 801 F. Supp. 3d at 936; accord *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025).

Because Petitioner has shown he has a protected liberty interest to remain free from re-detention based on his discretionary release for a significant amount of time, the undersigned must determine what process is due before the government may terminate that liberty interest. To determine this, the undersigned considers the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id*. at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention. Petitioner asserts, and Respondents do not dispute, that he had been released from immigration custody for over 20 years prior to his re-detention. Respondents assert

14

that he failed to comply with the conditions of his release but do not provide any particulars as to these alleged violations, and the violation list attached to Respondents' response evidences that two of the purported violations may not have been considered violations, leaving one purported violation: a virtual home visit failure on April 15, 2025, approximately six months before his re-detainment. *See* (Doc. 8). Petitioner provides that he was arrested for domestic violence but charges were dropped and that he was charged with speeding and unlicensed driving. Respondents do not argue that any criminal charges nor related convictions warrant detention without a bond hearing. Thus, Petitioner's continued liberty interest in remaining on release is undermined by his re-detention without a bond hearing. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause…. The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination. *Id*. at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Because there were no procedural safeguards to determine if Petitioner's re-detention was justified, and Respondents present no facts detailing any change in circumstances while Petitioner was on release sufficient to justify Petitioner's re-detention, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6. Therefore, this factor weighs in favor of granting a bond hearing.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-

15

detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing.

Respondents assert that after Petitioner was released, he violated the conditions of his release on three occasions. (Doc. 8 at 6). Upon review of the record, the undersigned does not find Respondents' assertions regarding Petitioner's purported lack of compliance with any conditions of supervised release meritorious. As discussed above, the government does not proffer any particulars, nor do any appear in the record, regarding the nature of the purported violations to justify ICE's re-arrest and re-detention of Petitioner. Therefore, Respondents have not shown that Petitioner failed to comply with any conditions of his release nor any changed circumstances sufficient to justify Petitioner's re-arrest and re-detention. And even if Respondents' assertions regarding Petitioner's purported lack of compliance were credited, they are not relevant to the issue of whether Petitioner is entitled to a custody redetermination by an immigration judge given Respondents do not argue, and the record does not show, that Petitioner was ever determined to be a danger to the community or a flight risk to justify his re-detention. *See* (Doc. 8).

In sum, the undersigned finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest in November 2025 and continuing detention thereafter.

**B.     Remedy**

The undersigned considers whether Petitioner is entitled to a pre-deprivation or post-deprivation bond hearing, and further, addresses what standards should apply at that hearing.

First, the undersigned concludes that Petitioner is entitled to a pre-deprivation bond hearing. As summarized above, although Respondents assert Petitioner's purported lack of compliance due to violations of his terms of release (*see* Doc. 8 at 6), Respondents offer no credible basis to find that Petitioner may have violated such conditions as Respondents have not proffered any particulars

16

as to the nature of the alleged violations and include no declaration with testimony from any official. Although a petitioner may be entitled only to a post-deprivation hearing where the government's assertion that the petitioner violated conditions of supervision is "not obviously pretex[t]ual" (*Martinez Hernandez v. Andrews*, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025)), here, because Respondents' asserted basis for arresting Petitioner is not supported by facts in the record, the undersigned finds the weight of the evidence "favors a finding that Petitioner was likely in compliance with the conditions of [] release, preserving the full force of [the] liberty interest" implicated. *See Kaur v. U.S. Dep't of Homeland Sec.*, 813 F. Supp. 3d. 1167, 1176 (E.D. Cal. Dec. 22, 2025) (granting petition and imposing pre-deprivation hearing requirement; "the Court cannot credit unverified statements which contradict evidence in the record").

Additionally, though Petitioner provides that he was arrested for domestic violence and charges were dropped, and that he was charged with speeding and unlicensed driving, the record does not evidence any convictions. Respondents do not argue that any arrests or charges are relevant to Petitioner's claims. *See* (Doc. 8); *Munoz-Flores v. Chestnut*, No. 1:26-cv-01301-KES-HBK (HC), 2026 WL 457124, at *1 (E.D. Cal. Feb. 18, 2026) (noting that the "contention that an arrest, without more, constitutes evidence of criminal activity is without merit" and that respondents failed to show petitioner violated any of his release conditions where he was charged, but not convicted, of driving under the influence after his release on recognizance) (citation omitted); *Singh v. Bondi*, No. C26-0598-SKV, 2026 WL 747104, at *3 (W.D. Wash. Mar. 17, 2026) ("An arrest, standing alone, is not evidence of criminal activity in breach of Petitioner's release conditions.").

Second, Petitioner was released by DHS at its discretion following his initial encounter. Though neither Petitioner nor Respondents provide a precise date of release, Petitioner alleges that he was working for 20 years prior to his re-detainment and Respondents do not dispute this. (Doc. 1 ¶ 22). In releasing Petitioner, immigration officials necessarily determined that he did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the

17

alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.”). Nevertheless, Petitioner has not been afforded a bond hearing before an immigration judge.

"Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id*. (internal quotation and citations omitted).

Given the undersigned's findings on Respondents proffered basis for re-arresting Petitioner (a purported violation of the terms of his supervised release by incurring a violation with no particulars provided thereto), the undersigned will recommend that the government bear the burden of establishing at the bond hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *E.g.*, *Singh v. Andrews*, No. 1:25-cv-01438-EPG-HC, 2025 WL 3563221, at *8 (E.D. Cal. Dec. 12, 2025) (" … Respondents briefly claim that Petitioner violated his terms of release by failing a virtual home visit … Respondents do not contend that Petitioner is a danger or flight risk based on this one alleged violation nor do Respondents assert that Petitioner's re-detention was initiated because of or warranted by this alleged violation, instead relying solely on their new interpretation of § 1225(b) … Petitioner's immediate release is the appropriate remedy."); *Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19, 2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions); *M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *13-14 (E.D. Cal. Nov. 112, 2025) (same). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025)

(relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, at 1034, 1038 (N.D. Cal. 2025)); accord *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8-9 (E.D. Cal. Nov. 22, 2025).

### C.    Respondents' Reference to Ninth Circuit Appeals

Separately, Respondents assert that there are matters pending appeal before the Ninth Circuit that bear on the issues presented in this case. (Doc. 8 at 1 n.1, 3; citing, *inter alia*, *Rodriguez v. Bostock*, No. 25-6842).  Having found that Petitioner's re-arrest without a bond determination and continuous detention for a considerable length of time violates the U.S. Constitution, the undersigned will not recommend holding the matter in abeyance pending said appeals.  *See Zadvydas*, 533 U.S. at 690 (reaffirming that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

### V.    **Respondents' Motion to Dismiss**

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024).

The Ninth Circuit in *Doe* held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition." *Doe*, 109 F.4th at 1197.  The Ninth Circuit also held that, when a "habeas petitioner challenges a form of 'custody' other than present physical confinement, the respondent can be the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.* at 1192 n.2 (quotation marks omitted; citing *Padilla*, 542 U.S. at 438).

As Petitioner has named his immediate custodian as a Respondent and the undersigned

recommends the petition be granted and an injunction be entered regarding future re-detainment of Petitioner by Respondents, the undersigned will recommend that the Court deny Respondents' motion to dismiss (Doc. 6).

**VI.      Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (Doc. 1) be GRANTED.

2.  Respondents' motion to dismiss (Doc. 6) be DENIED.

3.  Respondents be ORDERED to release Petitioner immediately.

4.  Respondents be ENJOINED and RESTRAINED from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

5.  The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to

refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 28, 2026**    _____
                                 UNITED STATES MAGISTRATE JUDGE

21